2014 5-0-3-6, and we'll be ready when Mr. Hawks is, when the others have settled down. Good morning, Your Honors, and may it please the Court. There are two issues in this appeal, and unless the Court has a preference, I'll take them up in the same order as the Court of Federal Claims below, starting with the SBA referral issue. This issue is one of narrow statutory construction. Specifically, does the term government procurement officer include GPO contracting officers for purposes of the SBA Certificate of Competency Program? When you say in your brief that the statutory roots of the Certificate of Competency Program are found in the 51 amendments to the Defense Production Act of 1950, and that they refer to government procurement officers without excluding legislative agencies, what authorities show that those COC provisions of 51 were actually applied to legislative agencies? One of the interesting aspects of this case is that the government never put any evidence as to what happened before 1978. Before 1978... I was asking what you have in the record that shows this. Well, there's no record, there's no evidence either way. What you have, there's no evidence that it applied to... I'm asking for authority, I mean... Well, the authority is the statutory language. No, no, no, no, no. Is there a reported case? Is there something in a legislative brief order? Is there something to which you can cite? Because I couldn't find anything. No, Your Honor. There's nothing in the record that says what was happening prior to 1978. But the point is, prior to 1978, there was no dispute that the phrase, the word government was ambiguous. Neither the court below nor the GPO has ever said that prior to 1978, the word government excluded legislative agencies. So what we're faced with is what happened in 1978. What was it in the 1978 amendments that narrowed the word government to exclude an agency like GPO? And the answer turns out to be that the 1978 amendments narrowed certain parts of the Small Business Act, but not others. And we know that from the way Section 224 of the 1978 amendments was drafted. It was carefully drafted. If Congress had wanted to narrow the entire statute to exclude legislative agencies, all it had to do was put a single sentence at the beginning of the statute that said, the scope of this statute is limited to agencies as defined by Title V, Section 551.1. It did not do that. Instead, it gave us this crafted statute provision, 224, which had two different sections to it. 224A is what became, in the U.S. Code, Section 637C. 224B is what became, in the Code, Section 632B. And 632B did not contain a narrow definition of government procurement contract. Only Section 337C had that narrow construction. Let me take you back to prior to 1978. Say there's no authority, and the question is the ambiguity of the word government. So what about the Constitution of the United States, which provides for separation of powers and a distinction between the legislative and the executive? And the lines in the case that say that the legislature may not necessarily take action which adversely impacts, say, the judiciary in certain fashions when it's not compliant with the Constitution. I'm thinking of the Beer case, for example, which just prior to 1978 that says that government means something a little clearer than the ambiguity with which you address it. I may have misunderstood your earlier question. I was referring to there being no evidence of agency practice prior to 1978. Certainly... I asked for authority. Well, the word government... The court below found the word government to be ambiguous, but she didn't explain why. She said it was simply undefined. But because a word is undefined doesn't mean it's ambiguous. Quite the contrary. If the word is undefined, then you would apply the plain meaning. And our position is the word government has a plain meaning. It means the entire government of the United States unless there's a specifically defined term that changes that meaning. And we cited one example in our brief where the word government has been given a specifically defined term to exclude... other than the entire government of the United States. That's not the case here. What you have here is prior to 1978 the word government simply meant government. It meant the entire government of the United States. It was only in 1978 that Congress took any steps to narrow that definition. And our point is when it narrowed that definition, it only did so to certain parts of the Small Business Act, but not the section that we're concerned with here. Not with respect to 637B7, which is the COC authorizing statute. And you can draw that intent from the way those two sections were carefully drafted. As I say, it would have been simple for them to have narrowed the entire statute, but they didn't. Now the government and the court below believes that that's a problem here because it creates an anomaly. And the anomaly can be found in Judge Horne's decision on page 32-37 of the appendix where she says it's unreasonable to interpret government procurement contracts as excluding GPO contracts for one part of the statute and then interpret government procurement officers as including GPO procurement officers in other parts of the statute. Well, the government described the anomaly a little bit differently. They say on page 35 of their brief that it's an anomaly to have government procurement contract exclude GPO contracts for purposes of part of the statute, but then have the term government contract include GPO contracts in others. Well, we agree it's an anomaly. And our position is, first, Congress intended that anomaly because of the way they crafted section 224 of the 1978 amendments. And secondly, even if it's an anomaly, so what? The Supreme Court just this past summer, in its final weeks, they handed down a decision which I've cited to the court in a citation of supplemental authorities. And Justice Kagan said that even though you have an anomaly, that doesn't empower the court to revise the legislation. And specifically she said, quote, truth be told, such anomalies often arise from statutes, if for no other reason than that Congress typically legislates by parts, addressing one thing without examining all others that might merit comparable treatment. That is exactly what happened here. The Small Business Act has been amended over time. It developed from the 1951 Defense Production Act amendment. It got its own statute in 1953. It was then reauthorized in 1958. It was amended in 77, amended in 78, and amended in 1984. It's not at all surprising that the 1978 amendment has created this anomaly. But even beyond the fact that you have an anomaly that came as a matter of due course, take a look at the 1984 amendments. This is the last time Congress addressed the statute. And when they addressed it this time, they did it in the context of an administrative exemption that SBA had created for contracts under $10,000. SBA, by regulation, said that we're no longer going to take certificate of competency referrals for contracts under $10,000. Congress stepped in in 1984 and said, no, we didn't authorize that exemption and we're not going to let you do it. And they not only took away the $10,000 exemption, they specifically put into the statute that SBA can't make any further exemptions by regulation and they can't refuse a referral. Well, what you have here is two agencies, SBA and GPO, in effect creating, through 30 years of practice, an exemption that hasn't been authorized by Congress. And the irony is, this 30 years of practice has itself created an anomaly. And the anomaly that I'm concerned about is the anomaly in which an executive agency, such as the Department of Health and Human Services here, has to comply with the COC program if they had bought this printing piece itself. But now they don't have to comply if they go through GPO? I think that's a loophole that Congress never intended and that the agencies can't create on their own. If there are no further questions on the COC issue, let me address the rational basis issue briefly. On the rational basis issue, the parties apparently have a dispute over what the issue is. We believe the issue is whether the determination and findings, what I'll call the DNF, whether that furnished a rational basis for the contracting officer's decision. The government seems to feel that the issue isn't whether the DNF furnished a rational basis, but whether the contracting officer had a rational basis as determined anywhere in the administrative record. On this issue, I'd point out exactly what the court below ruled. The court below didn't say that the contracting officer had a rational basis. The court specifically said the DNF had a furnished a rational basis. So it's the DNF that we have to look at. When you read the first part of the court's decision, it almost sounds as though she's going to rule in my favor. She makes one criticism after another of this GPO regulation and the DNF itself. Then at the very end, she says, well, let's look at the declaration that the contracting officer made in the GAO protest and reverses her position and says, well, that's enough. My position is that the DNF has to stand alone. No, it reverses her position. Well, perhaps I overstate it. It's sort of like an O. Henry story. You expected one ending from the first part of the decision and you get something quite the opposite. Mr. Hawks, you wanted to reserve five minutes. If you're willing to that time, you can continue your affairs. I'll reserve. Thank you, Your Honor. Mr. Grimaldi. My nickname, Mr. Hawks, when I was a little boy, was Raven G, if you're familiar with that. May it please the court. Your Honor, I'd like to start off by answering your question. What is the authority prior to 1978? What does government procurement officer mean here? In 637B7, or at that time, I think just 637B, it wasn't broken up into separate parts. There is none. There was no definition of government before that time. No definition of government contract, government procurement officer in the Small Business Act. Regarding separation of powers, yes, we have to recognize separation of powers. What we have with the Small Business Act is one executive agency contracting, cooperating, advising with other executive agencies for a socioeconomic program to give work to businesses that are small and need developing and so on. It makes sense that it's not working with the legislative or judicial branch for these purposes. So no, there wasn't any definition before 1978, and it makes sense that before that time, it was only applying to executive agencies. Now, looking at Clinton Press's argument, they say let's look at the plain meaning of government. Government means government. But then they don't look at the plain meaning. Rather, what they urge this court to do is to look at the historical context of the Small Business Act and the COC program and use that in lieu of what they consider to be a linguistical context, as we offer in our brief. This is, again, an interpretation. This isn't the plain meaning. Clinton Press argues that consistently since 1953, Congress has tried to expand, expanding the program through various acts, taking away the discretion to use the COC program, and they want this court to then, I guess, interpret government procurement officer in an expansive manner, thinking that in the past, everything's been expanded, so the definition of every word within 637b7 should have an expansive definition. Is there something wrong with that theory? Well, it has a logical flaw. Every step that Congress has taken in expanding the COC program has always been explicit. They've said, well, they haven't said, they've scratched out the discretion. They've made it mandatory. This wouldn't be such a situation. We have the Small Business Act, which runs from 631 to about 657 or so, which only addresses executive agencies and how SBA works with them, not the legislative, not the judicial. This law is the same. What the court did below was to look at, within the same section, 637a, and see procurement officer and see how it's tied to department or agency, then look at 632b, which was enacted in 1978, which provides a definition for department and agency as what the definition is in 5 U.S.C. 551, which is federal agencies that don't include Congress. Now, I know that's a train down, and you have to go through each one of these U.S. codes, but it's all there, Your Honors. It's consistent with other parts of the Small Business Act, such as 644, in which it sets up government-wide goals for small business utilization and says specifically that federal agency heads must do so. So they use the term government-wide, but apply it only to federal agencies. I do want to be clear that we are not arguing that there is some sort of anomaly here. Looking at the, and now the name of the case that escapes me from the supplemental briefing, the Michigan Bay, maybe it was, case, we had an anomaly in that situation because there would be the ability for Michigan to regulate gaming on an Indian reservation, but not outside of an Indian reservation. That's not what we're arguing here, Your Honors. We're arguing that a term here, government procurement officer, should be given the same meaning throughout an entire statute, and that's the Gustafson case and the Food and Drug Administration case that we cite to in our brief, Brown v. Williamson tobacco. One of the facts over which this may turn is the explanation for the late deliveries and so on that was sent by Saruga, I believe it is. Yes, sir. Supposedly on February 12th, I think that conceded that it was sent, but on February 14th, GPO again requests an explanation. So one possible conclusion is that that email was never reviewed. Is there anything that shows it was? Well, yes. Turning to the non-responsibility issue here, Your Honor, we have the decision here, the determination and finding, which we believe does contain a rationale. We have the rationale in it. It has the history of the late performance. Yes, it's there. And then it has the sentence, and this is the last sentence of the findings, and this is on 348 of the joint appendix. We have no evidence that the contractor has taken any actions that would lead us to believe their performance will improve. Now, we admit in our brief there's two ways to read this. Number one, there's no evidence whatsoever that none was received by GPO. They didn't review anything. And number two, the evidence they did receive did not convince them that there would be improvement. What can we do to confirm what the contracting officer was thinking this time? We have the GAO declaration. That was part of the agency report and thus part of the administrative record before the Court of Federal Claims. This is JA338. The contracting officer, so the same individual who made the determination and finding, says, at the time I made my decision, I was aware of the excuses and explanations offered by Colonial for some of the late performances in 2012. However, none of this altered my concern about the sudden frequency of late deliveries. So, yes, it was considered. And even Colonial Press, in their brief, in their reply brief at 10-11, concedes that the administrative record can be used to confirm what is in the determination and findings document. What they're actually arguing before this Court is that all this information needs to be included on the single page, on this one page, 348. It all needs to be there. That's not what the printing procurement regulations require. They say that the determination and findings should be concise, a single page, contain findings and determinations. That's what we have on 348. It's all there. So in addition to the... In those guidelines, if a contracting officer sent two pages, would it just be rejected? It seems like a suggestion. It's a suggestion. It should be on one page, I believe. I think it says should, but it needs to be concise. And certainly there's room on this page for more, Your Honors. We're not saying that we've run out of room here. You can see that on 348. But the rationale is here. It only requires it needs to have a rationale. It's here. The Court found it reasonable. What Colonial Press is not arguing before this Court is that one cannot find Colonial Press nonresponsible on the record. They don't argue that. Just that they want a better rationale, a different rationale on 348. Well, the rationale on 348 is here, and it's sufficient, and the record supports it, which brings up another issue here, Your Honors, is no presence. There must be a substantial chance that Colonial Press would receive the award if there was no error that occurred, excuse me, no procurement violation occurred. I'm going to say that again because I stumbled over it about a billion times there. They must show that there is a substantial chance they received the award but for a procurement error. Here we have the record, and we have the declaration by the contracting officer saying that the excuses they provided did not allay her fears about their nonresponsibility. So we know what will happen if more is required in this determination of finding. The same information will disappear on this one page, 348. So there's no prejudice, Your Honors. Well, if Your Honors has no further question. Thank you. Thank you, Mr. Grimaldi. Mr. Hawke has a few minutes for rebuttal. Your Honors, two quick points. Mr. Hawke, what about the underlying facts, that your client was increasingly and consistently late and that the record shows they did offer some excuses and say they were going to get better, but isn't there enough there for a reasonable contracting officer to think, no, it's not enough, and the offer of the bid from the next higher bidder wasn't that great, the difference wasn't that great, given their record as opposed to your client's record? We feel that we put enough in the record to rebut the specifics of the late deliveries. But more importantly, the rationale had to have been put in the DNF. And the regulation here doesn't say the DNF should stand on its own. It doesn't say the contracting officer should try to make the DNF stand on its own. The regulation says the DNF must stand on its own. And the two quotes that opposing counsel just tried to harmonize, this has to do with, in the DNF the contracting officer says there's no evidence before me showing that there'd be improved performance. And then in her declaration she says, oh, I looked at all the evidence. Opposing counsel tried to harmonize that, but the court below specifically said that those two statements stand in stark contrast with each other. Stark contrast is her words. And I take that to mean that the declaration that was put in the GAO bid protest wasn't explaining the DNF. It was rewriting the DNF. And the point that Your Honor just made about there being a recent uptick in late deliveries, that was not in the DNF. That's a new rationale. The DNF only said, well, there were three late jobs. Well, if the rationale is that there was an uptick in late deliveries, what about the deliveries that were on time in December, January, and February? That supposed uptick happened in November. Well, if you're going to focus on the most recent deliveries, then you have to explain why the nine on-time deliveries are meaningless compared to the three late deliveries in November. And the contracting officer did not address that point in the DNF. She tried to explain it away in the Hall declaration. And our point is that the DNF has to stand alone. Thank you. Mr. Hawks, we'll take the case under advisement. Thank you.